# EXHIBIT 26

**CITTA, HOLZAPFEL & ZABARSKY**
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
248 WASHINGTON STREET
TOMS RIVER, NEW JERSEY 08753
(732) 349-1600
Fax (732) 349-0792
-Founded 1934-
www.cittaholzapfelzabarsky.com

JOSEPH A. CITTA (1934-2009)
JAMES W. HOLZAPFEL Member NJ & FL Bars
STEVEN A. ZABARSKY
E. DAVID MILLARD (of Counsel)

BRIAN K. WILKIE
BARRY A. STIEBER
RONALD F. DeLIGNY (of Counsel)

MATTHEW A. LEAHEY (1977-20[illegible])
JOHN J. MERCUN (1976-20[illegible])

**ATTORNEY-CLIENT PRIVILEGED**

**MEMORANDUM**

To: Louis Amoruso, Business Administrator

From: Brian K. Wilkie, Esq.

Date: September 24, 2021

**Re: In Re Joanne Benson and Linda Valeri**

This office was requested to conduct an initial investigation into allegations of sexual harassment at Toms River Township.

The complainant, Linda Valeri, an office manager at the Toms River Senior Center, levied a number of complaints against her superior, Joanne Benson, Director of the Toms River Senior Center. Ms. Valeri could be considered a direct subordinate of Ms. Benson, and both reflected that they had a significant amount of interaction daily with one another. In light of these complaints, Ms. Valeri was moved to the Toms River Recreation Department on an interim basis.

In a typed complaint dated July 20, 2021, Ms. Valeri listed ten instances (encompassing both specific events, and more general workplace temperament issues) where she felt as though Ms. Benson's attitude and demeanor had exceeded the normal, healthy bounds of a work environment, thereby causing stress, anxiety, and unhappiness. Ms. Valeri alleges that this sentiment is pervasive throughout the workplace. The itemized list is attached hereto.

Toms River Township Administration took action to accommodate the concerns of Ms. Valeri pending this investigation, specifically by immediately moving her to the Toms River Township Recreation Department, where her duties were substantially similar, and the terms and conditions of her employment were identical.

**Phone Interview of Complainant Linda Valeri - 27 August, 2021**

Ms. Valeri was interviewed in the above fashion, on the above date. She reiterated the items reflected in her drafted complaint (see attached). Speaking broadly, Ms. Valeri described the work environment as intimidating, anxious and unhappy, due primarily to Ms. Benson's attitude, demeanor, and actions. She identified the following behaviors as being prevalent in interactions with Ms. Benson: demeaning nature, rude, interrupting, unwilling to work collaboratively with others, or to permit coworkers to work collaboratively amongst each other. Ms. Valeri additionally noted that the feelings described above are shared by many of her coworkers, though she felt as though none were willing to come forward due to fear of retaliation.

Ms. Valeri noted a series of incidents where Ms. Benson referred to Ms. Valeri as being a part of a "pussy posse," a reference apparently to the female anatomy, and in regards to Ms. Valeri's former assignment within Toms River Township. Ms. Valeri noted that this statement was never said directly to her, but that coworkers reflected to her what was stated. Ms. Valeri further reflected that apparently part-and-parcel to these statements, Ms. Benson would on occasion provide pictures from social media of Ms. Valeri to whomever she made the statements to.

Ms. Valeri indicated this was the first complaint she had lodged regarding Ms. Benson. She advised she did not want to file the complaint, but that she was at "wit's end." She reported that there have been no further issues, though she maintains concerns about retaliation from Ms. Benson.

Ms. Valeri provided a list of witnesses. Per her indication, four witnesses could act as fact witnesses to the "pussy posse" incident, and the other witnesses could provide statements as to the timbre of the work environment.

Regarding what she would find to be a satisfactory resolution, Ms. Valeri indicated that all she wanted was for a more harmonious work environment which didn't include the hostility she articulated in her complaint and in our interview. She did not indicate that she believed Ms. Benson should have severe action taken against her employment status. When asked about whether she felt as though she should return to the Senior Center or whether she would like to stay in the Recreation Department, she advised she had a slight preference for the Recreation Department, but expressed concern over whether or not it was "feasible."

**Phone Interview of Respondent Joann Benson - 7 September, 2021**

Ms. Benson was interviewed in the above fashion, on the above date. Ms. Benson was advised that complaints had been filed against her in regards to a Hostile Work Environment. Ms. Benson spoke sparsely on the complaints. She acknowledged the incidents generally, but minimized/ downplayed any alleged hostility. She acknowledged that she would criticize employees in a sometimes public manner in an effort to address performance issues right away, and not as a way to simply belittle and embarrass them. She did not feel as though she was abrasive in her attitude and demeanor.

Ms. Benson freely acknowledged that she had referred to Ms. Valeri in context to a "pussy posse," but similar to Ms. Valeri, advised it had only been done in the presence of third parties, and not ever stated directly to or while in Ms. Valeri's company.

In the course of her interview, Ms. Benson made a concerning statement that should be brought to the attention of Township Administration; to wit: "I prefer to hire men." She elaborated that she felt as though there was natural conflict between her and many of her employees, as most of her employees are sent to her from other departments, and that "all of [her] hires are fine with [her]." Ms. Benson acknowledged that she would not take any retaliatory action against Ms. Valeri.

Findings and Recommendations

Toms River Township maintains a policy against the creation, fostering, or toleration of a hostile work environment for any of its employees. This policy requires a thorough and fair investigation by an unbiased party when a hostile work environment is alleged. Toms River Township recognizes its legal duty to provide for this investigation.

Ms. Benson maintains a relatively clear employment history when viewed in its 35 year scope. I am in receipt of a complaint from 2017 that describes similar unpleasant and rude behavior as Ms. Valeri describes, though I have no indication formal discipline occurred. Additionally, I am in receipt of a complaint from 2019 and other supporting documentation that indicate Ms. Benson had been disciplined for potential HWE-type actions, similar to--though unequivocally more egregious-- than described by Ms. Valeri. Accordingly, this matter should be viewed at least as a second offense.

While I had begun to schedule/ plan out the interviews of the witnesses, the facts were susbtantively confirmed by all parties, obviating the need for exterior confirmation, and streamlining fact-finding. The facts also provide for a "bright line" in terms of a legal determination.

A legally actionable "hostile work environment" pusuant to the NJ Law Against Discrimination necessitates that a worker be harassed, bullied, intimidated, treated disparately, etc., based upon their status within a protected class (age, sex, race, veteran status, etc.), to the extent that the terms or conditions of their employment have substantially changed. NJLAD is, notably, not a general civility statute, meaning people are legally permitted to be rude, unfair, mean, annoying, or to otherwise treat their coworkers/ subordinates poorly, provided that it is not predicated on a protected class status.

Thereby, even though I am compelled to believe Ms. Valeri's account of her interactions at face value, the vast majority of these complaints are not actionable, and are not indicative of legally defined harassment on their face. Most of these complaints are sufficient evidence that Ms. Benson is abrasive and rude at her place of employment. Most of these complaints may even indicate that Ms. Benson has poor managerial skills. However, most of these complaints provide no evidence of a hostile work environment as detailed in the New Jersey Law Against Discrimination, when viewed independently.

Specifically, ¶ 1 through ¶ 7, ¶ 9 and ¶ 10 of Ms. Valeri's complaint are not actionable on their face pursuant to NJLAD, the ADA, and the ADEA.

I would highlight two areas of concern that do arise. The "pussy posse" statement reflected in ¶ 8 and confirmed by Ms Benson, in conjunction with Ms. Benson's unprompted statement that she only liked to hire men, does provide circumstantial evidence that her interpersonal skills, and perhaps her hiring practices, are affected by the gender of the employee. However, at this time, I am not investigating Ms. Benson's larger employment record. This may nevertheless be something Township Administration needs to investigate if Ms. Benson's employment and role as a supervisor are to persist. If more complaints arise, and/or additional evidence is uncovered of disparate treatment, with the defining characteristic of mistreatment being an employees' status in a protected class, then it would be my opinion that Ms. Benson's actions had violated the above-articulated statutes, and could be subject to dire employment consequences.

It is thereby my finding that Ms. Valeri's allegations are truthful and accurate, and are **sustained**. Further, they were substantively confirmed by Ms. Benson. However, most of these allegations do not run afoul of any particular law or employment policy, and are merely regrettable and/or unpleasant qualities to have in a coworker. It is my recommendation for all complaints but-for ¶ 8, that she receive an oral reprimand and encouragement to change her managerial style and improve her interpersonal relations.

As ¶ 8 represents at least a second iteration of concerning conduct related to a Hostile Work Environment, I would recommend the following discipline for Ms. Benson:

- a written reprimand;
- additional training/ education in context to a hostile work environment;
- a period of suspension in comport with the policies and procedures of Toms River Township.

The Township is not limited to these recommendations, and may elect to take more or less severe action as Township Administration deems reasonable and prudent.

Ms. Valeri, who herself acknowledged that all she wanted was a work environment that was not hostile, should be permitted to either return to the senior center in her prior capacity, or to stay in the recreation department in a substantially similar role. She should experience no changes in her compensation, or the terms/ conditions of her employment.

All parties should be advised to not retaliate against one another, and that any retaliation is grounds for termination.

I would be remiss if I didn't address Ms. Benson's statement as to her hiring practices. Her statement regarding her hiring practices, if verified, could be grounds for drastic action against her employment status, up to and including termination. If Ms. Benson were to resign or retire before such an investigation could occur, the matter should be considered moot.

**Conclusion**

For the foregoing reasons. the above is my recommendation. Ms. Benson should address her managerial style. and take great care in not engaging in any additional patterns of conduct that are or could be construed to be legally hostile.