# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LINDA VALERI,**<br><br>      **Plaintiff,**<br><br>      v.<br><br>**TOWNSHIP OF TOMS RIVER,** *et al.*,<br><br>      **Defendants.** | Case No. 22–cv–02117–ESK–EAP<br><br><br>OPINION |

**KIEL, U.S.D.J.**

    **THIS MATTER** is before the Court on plaintiff's motion for "partial" summary judgment (ECF No. 40) as to counts one and two, and four through ten of the complaint and defendants' motion for summary judgment as to all counts (ECF No. 50).) Plaintiff filed a brief in support of her motion (ECF No. 40–1 (Pl. Br.)) and a statement of material facts (ECF No. 40–2 (Pl. SOMF)). Defendants opposed plaintiff's motion for "partial" summary judgment (ECF No. 51 (Def. Opp.)) and filed a response to plaintiff's statement of material facts (ECF No. 52 (Def. Response to Pl. SOMF)). Defendants also filed a brief in support of their motion (ECF No. 50–8 (Def. Br.)) and statement of material facts (ECF No. 50–1 (Def. SOMF)). Plaintiff opposed defendants' motion for summary judgment (ECF No. 61 (Pl. Opp.)), filed a counter-statement of facts to defendants' statement of material facts (ECF No. 61–1 ), and responded to defendants' statement of material facts (ECF No. 61–5.) Plaintiff and defendants filed reply briefs in further support of their respective motions. (ECF Nos. 64 , 65 (Def. Reply).)

    For the following reasons, summary judgment is GRANTED in favor of defendants on counts one, eight, and nine of the complaint, and this case is DISMISSED without prejudice for lack of subject matter jurisdiction.

## I. FACTUAL[1] AND PROCEDURAL BACKGROUND

On December 1, 2005, plaintiff was hired by Township of Toms River (Township) as an escrow clerk for the planning and zoning board of the Township. (Def. SOMF ¶ 1.) On May 1, 2006, plaintiff transferred to a new position as a conditional secretary in the department of law and the mayor's office. (*Id.* ¶ 4.) On or around January 1, 2020, she transferred to the staff of Don Guardian, who was the Township business administrator. (*Id.* ¶ 14.) Plaintiff joined defendant Lou Amoruso's staff when he became the business administrator in June 2020.[2] (*Id.* ¶¶ 15, 16.) On December 1, 2020, plaintiff transferred to the Township's senior center department (Senior Center) as an office manager. (Pl. SOMF ¶ 21.) Joanne Benson was plaintiff's manager at the Senior Center. (Def. SOMF ¶ 24.)

On January 21, 2021, plaintiff complained to Tara Lewczak, who was the personnel division manager for the Township and worked under Amoruso, and Amoruso about Benson's management style and conduct toward her. (Pl. SOMF ¶¶ 15, 45–53.) She reported that Benson was "overbearing," "always on top of her[, and] hanging over her desk." (*Id.* ¶ 50.) Plaintiff also complained that Benson "was a horrible person to work for and just that [Benson] was essentially a very abrasive person to be around [who] stood over [plaintiff] while she did her work[,] and basically [] a very miserable person." (*Id.* ¶ 53.) However, plaintiff told Amoruso that she "didn't want to get anyone in trouble." (*Id.* ¶ 65.) The Township did not conduct an investigation into plaintiff's complaint about Benson. (*Id.* ¶ 63.) Amoruso and Lewczak determined in "a

---

[1] The factual background is limited to facts that are relevant to counts one, eight, and nine.

[2] Amoruso supervises the department managers in the Township. (Pl. SOMF ¶ 14.)

2

mutual decision" that "no action was warranted based on [p]laintiff's statement, which alleged no actional improprieties." (*Id.* ¶¶ 64–66.)

On February 22, 2021, plaintiff was approved for intermittent leave[3] under the Family Medical Leave Act (FMLA). (Pl. SOMF ¶¶ 147, 148.) On July 21, 2021, plaintiff "came to the administration building with a written complaint about [] Benson being overbearing, on top of her all the time[,] and that she couldn't get things done." (Pl. SOMF ¶ 73.) In the written complaint, plaintiff alleged that Benson created a hostile work environment and acted improperly on "diverse dates." (Pl. SOMF ¶ 89.) Specifically, plaintiff alleged in her written complaint that:

> 1. On May 19, 2021 after returning from FMLA leave, Benson "aggressively rushed up very close to me and hastily asked me '[i]f I got lost' in front of the office staff in a very condescending hostile manner."
>
> 2. On July 6, 2021, Benson "came running out yelling and screaming that I HAVE to get in here and we are very busy. I was not on Township Time at this moment and had not punched in but when I did go in, I was on time for work."
>
> 3. On July 19, 2021, "I walked into work [and Benson] aggressively and angrily started abusing me and arguing with me on an issue where a driver made a very minor mistake."
>
> 4. On April 7, 2021, Benson "bashed my character to employees, Township Officials and outside parties [saying] that 'I am never there, [ ] why did (you) Admin. Send me to her, I do not know what I am doing … .'"
>
> 5. On various dates, Benson "committed acts of sexual harassment on me whereby using gra[ph]ic sexual terms describing me with female anatomy parts to all her Senior

---

[3] Also known as a "reduced leave schedule" which is defined in the FMLA as: "a leave schedule that reduces the usual number of hours per workweek, or hours per workday, of an employee." 29 U.S.C. § 2611(9).

> Center Employees, Other Township Department Heads and Township employees from the Finance Office. She used a township computer to pull up pictures of me and made up the vile nickname and appa[ll]ing term to another township employee on township time about myself and Mayor of Toms River. Additionally, several other township employees were also violated in the same way."

(ECF No. 40–23.) Amoruso and Lewczak met with plaintiff concerning her written complaint. (Pl. SOMF ¶ 74.)

After the meeting with Amoruso and Lewczak, plaintiff was transferred to the Township's recreation department (Recreation Department) on July 23, 2021. (Pl. SOMF ¶¶ 82, 267; ECF No. 40–24 p.2). Thereafter, Amoruso, acting on behalf of the Township, retained Brian K. Wilkie, Esq. to investigate plaintiff's July 21, 2021 complaint. (Pl. SOMF ¶¶ 94, 104.) Wilkie issued his report on September 24, 2021. (ECF No. 40–30). He determined that Benson had referred to plaintiff as part of the mayor's "pussy posse." (*Id.* p.4.) However, this statement was not made directly to plaintiff. (*Id.*) Also, Benson stated to Wilkie that she "prefer[red] to hire men" but that "all of [her] hires are fine with [her]." (*Id.*) Wilkie concluded that plaintiff's complaints were sustained but that "these allegations do not run afoul of any particular law or employment policy, and are merely regrettable and/or unpleasant qualities to have in a coworker." (*Id.* p.5.) He recommended, based on plaintiff's statement that she "had a slight preference for the Recreation Department," that she "be permitted to either return to the [S]enior [C]enter in her prior capacity, or to stay in the [R]ecreation [D]epartment in a substantially similar role." (*Id.*)

On April 12, 2022, plaintiff filed the complaint (ECF No. 1 (Compl.)) against the Township, Benson, Amoruso, and the Senior Center. She asserts the following claims against them: count 1 (violation of the FMLA, 29 U.S.C. §§ 2601 to 2654; count 2 (violation of New Jersey's Family Leave Act (NJFLA),

4

N.J.S.A. 34:11B-1 to -16; count 3 (violation of the New Jersey Conscientious Employee Protection Act); count 4 (sexual harassment under New Jersey's Law Against Discrimination (NJLAD)); count 5 retaliatory harassment under the NJLAD; Count 6 (reprisal under the NJLAD); count 7 (violation of New Jersey's Civil Rights Act, N.J.S.A. 10:6-1 to -2); count 8 (deprivation of federally protected rights under U.S.C. § 1983 (Section 1983)); count 9 (violation pursuant to *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978) (*Monell* Claim)); and count 10 (defamation).  (Compl. pp. 14–22.)

## II. DISCUSSION

A moving party is entitled to summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"  *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)).  A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

5

(1986). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by [their] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)).

Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250, 251.

### A.    FMLA CLAIM

An employee may be liable under the FMLA for (1) an interference claim under 29 U.S.C. § 2615(a)(1), and (2) a retaliation claim under to 29 U.S.C. § 2615(a)(2). *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 508 (3d Cir. 2009). Plaintiff raises both causes of action in support of her argument that summary judgment should be granted in favor of her as count two. (Pl. Br. pp. 13–15.)

#### i.    Interference

The FMLA provides that it "shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right" guaranteed by the FMLA. 29 U.S.C. § 2615(a)(1). The FMLA entitles an eligible employee up to 12 workweeks of leave during a 12-month period to care

6

for a spouse, or a son, daughter, or parent of the employee. 29 U.S.C. § 2612(a)(1)(C). A plaintiff must establish the following for an interference claim:

> (1) [S]he was an eligible employee under the FMLA;
>
> (2) defendant was an employer subject to the FMLA's requirements;
>
> (3) plaintiff was entitled to FMLA leave;
>
> (4) plaintiff gave notice to the defendant of her intention to take FMLA leave; and
>
> (5) plaintiff was denied benefits to which she was entitled under the FMLA.

*Ross v. Gilhuly*, 755 F. 3d 185, 191–92 (3d Cir. 2014) (citing *Johnson v. Cmty. Coll. Of Allegheny Cnty.*, 566 F. Supp. 2d 405, 446 (W.D. Pa. 2008)).

Plaintiff argues that Benson interfered with her rights under the FMLA by discussing the reasons she took leave with her colleagues and complaining to others about plaintiff's leave. (Pl. Br. p. 18); (*See* Pl. Opp. p. 23.) Plaintiff points to the incident on May 19, 2021, where Benson asked plaintiff, "[d]id you get lost?" and the incident on March 2021, where Benson yelled at plaintiff claiming that Benson suffered insomnia of plaintiff. (Pl. Br. p. 18; ECF No. 40–23 p. 4.) Plaintiff also references 29 C.F.R. § 825.220(b) (Regulation 825.220(b)), which provides that "[i]nterfering with the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." (Pl. Opp. 22, 23.)

Defendants argue Benson's alleged statements to plaintiff's colleagues, should not be considered because they are inadmissible hearsay. (Def. Opp. 18.) Although Benson's alleged statement appears to be hearsay, "if the statement is capable of being admissible at trial, despite it currently being in an inadmissible form, the statement may be considered for purposes of deciding

7

a motion for summary judgment." *Bender v. Norfolk Southern Corp.*, 994 F.Supp. 2d. 593, 600 (M.D. Pa. 2014) (citations omitted); *Shelton v. Univ. of Med. & Dentistry of N.J.*, 223 F.3d 220, 223 n.2 (3d Cir. 2000).  Accordingly, I will consider Benson's alleged statement as part of the record.

The question is whether there is evidence from which a factual dispute is raised that plaintiff was discouraged from continuing to seek FMLA leave. The Third Circuit's decision in *Fraternal Order of Police, Lodge 1 v. City of Camden*, 842 F.3d 231 (3d Cir. 2016) is instructive.  In that case, a police officer was granted FMLA leave to care for his seriously ill mother in May 2009. However, in the same month, "he was warned that he was using too much leave." *Id*. at p. 245.  The following month, he was placed in the "Chronic Sick Category" and when he informed his superior officer of his approved FMLA leave, he was told that "the Inspector did not care if it was approved and [the plaintiff] would continue to be placed in the category and would eventually be disciplined." *Id*.  The officer also complained that the members of the city's "staff visited him at home while he was on leave." *Id*.  And similar to plaintiff in this case, citing to Regulation 825.220(b), the officer argued the defendants' actions "chilled [his] assertion of his FMLA rights." *Id*. Defendants countered that the complained-of-actions were not "sufficient to deter a person of ordinary firmness from exercising [their] right[s]." *Id*. p.246.  The Court concluded that while it was "sympathetic to [the officer's] family situation," the actions were "minimally intrusive." *Id*.  Importantly, the Court held that the officer's FMLA interference claim was "doomed by an insufficient showing of injury." *Id*.  Because plaintiff conceded he was granted FLMA leave, he could not show interference "in tandem with actual harm." *Id*.

The result is no different here.  Although Benson's statements to plaintiff asking her if she got "lost" and statements to others complaining that plaintiff is "never there" maybe insensitive, they did not result in any injury to plaintiff.

8

It is undisputed that she was granted FMLA leave and there is no allegation that she was injured because she was "discouraged" from seeking further FMLA leave.

### ii.  Retaliation

"To succeed on an FMLA retaliation claim, a plaintiff must show that (1) he invoked his right to FMLA-qualifying leave, (2) he suffered an adverse employment decision, and (3) the adverse action was causally related to his invocation of rights." *Ross*, 755 F. 3d at 193 (citation omitted).  Further, "[b]ecause FMLA retaliation claims require proof of the employer's retaliatory intent, courts have assessed these claims through the lens of employment discrimination law.  Accordingly, claims based on circumstantial evidence have been assessed under the burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)[.]" *Lichtenstein v. University of Pittsburgh Medical Center*, No. 11–3419, 2012 WL 3140350, *6 (3d Cir. August 3, 2012).

Under the *McDonnell Douglas* framework, a plaintiff must first demonstrate "a prima facie case of discrimination.  If the plaintiff succeeds, the defendant must articulate a legitimate, non-discriminatory reason for the adverse employment action.  The burden then shifts back to the plaintiff to prove, by a preponderance of the evidence, that the articulated reason was a mere pretext for discrimination." *Ross*, 755 F. 3d at 193 (citation omitted). "[T]he non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence[.]" *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994) (quotations omitted) (emphasis in original).

9

"To demonstrate a causal connection, a plaintiff generally must show either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Budhun v. Reading Hosp. and Medical Center*, 765 F.3d 245, 258 (3d Cir. 2014) (citation and quotation omitted). Here, plaintiff does not cite to any evidence that demonstrated a causal connection between her leave and her transfer to the Recreation Department. She simply cites to cases detailing what a plaintiff must show to prove causation in a retaliation claim under the FMLA. (Pl. Br. p. 16.)

Moreover, the evidence in the record does not indicate that a causal chain exists. For instance, plaintiff was granted intermittent leave on February 22, 2021 and was transferred to the Recreation Department on July 23, 2021. Thus, there were more than five months between the leave and the alleged retaliatory action. Notwithstanding, even if plaintiff could sufficiently demonstrate that she can meet the three elements required to succeed in a FMLA retaliation claim, under *McDonnell Douglas*, defendants have presented legitimate, nondiscriminatory reasons for transferring plaintiff to the Recreation Department.

Plaintiff filed a written complaint on July 20, 2021 alleging that defendant Benson created a hostile work environment and referenced several instances of alleged misconduct by Benson. (ECF No. 40–23 pp. 1-6.) Thereafter, defendant Amoruso submitted a notice to plaintiff acknowledging the complaint, notifying plaintiff that the Township will investigate her complaint, and stating that, "this investigation will be conducted in a manner that protects the privacy of all involved to the greatest extent possible. Effective July 23, 2021 you will be temporarily report to the Recreation Department while this matter is addressed." (ECF No. 40–24 p. 2.) The Township retained Wilkie to conduct the investigation. (ECF No. 40–28 pp. 2–5).) The record

demonstrates that defendants temporarily transferred plaintiff to the Recreation Department while her complaint was being investigated. And then, upon plaintiff's request and Wilkie's recommendation, plaintiff continued her employment in the Recreation Department. (*See* ECF No. 40–30 p. 5.)

Thus, under *McDonnell Douglas*, the burden shifts back to plaintiff to show that defendants' articulated reasons are pretext. However, plaintiff fails to counter with evidence in the record that the reason for the transfer was a pretext. Accordingly, summary judgment will be granted in favor of defendants on plaintiff's FMLA claim.

### B. SECTION 1983 CLAIM

Count VIII of the complaint asserts a claim for "deprivation of federally protect rights under 42 U.S.C. § 1983." (Compl. p. 20.) The complaint commits the pleading-sin of "containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321–23 (11th Cir. 2015). Indeed, Count VIII, in its entirety, reads:

> 135. Plaintiff hereby incorporates, in their entirety, each and every paragraph contained in this complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.
>
> **WHEREFORE**, Plaintiff demands judgment against Defendants upon her claim for compensatory damages, punitive damages, attorney's fees, costs of suit, and such other relief as may be equitable and just.

Defendants could have made a strong argument at the pleading stage—by way of a motion to dismiss under Rule 12(b)(6)—that many (if not all) of the claims in the complaint are not plausibly alleged. Defendants, however, chose to file an answer and proceed with discovery. Thus, it is unclear from the complaint

how plaintiff was deprived of her federally protected right and what the bases are for her claim under §1983.[4]

According to plaintiff, however, "the evolution of this case … indicates that [p]laintiff is relying upon the denial of equal protection rights, as opposed to substantive due process" as the basis for her §1983 claim. (Pl. Opp. p. 36.) In her opposition to defendants' motion for summary judgment, plaintiff asserts the basis of her §1983 claim is the violation of the FMLA,[5] and sexual harassment and hostile work environment. (*Id.*)

To obtain relief under §1983, a plaintiff must establish that: (1) one of her rights secured by the Constitution or laws of the United States was violated; and (2) this violation was caused or committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (§1983 does not provide substantive rights; rather, it provides a vehicle for vindicating violations of other federal rights). Additionally, to prevail in a §1983 claim alleging a denial of equal protection due to sexual harassment, plaintiff "must prove the existence of purposeful discrimination." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990) (citing *Batson v. Kentucky*, 476 U.S. 79, 93 (1986)). Plaintiff must also show that she "received different treatment from that received by other individuals similarly situated." *Id.* (citation and quotation omitted). "Specifically to prove sexual discrimination, plaintiff must show that any disparate treatment was based upon her gender." *Id.* (citation omitted). To meet the *prima facie* elements for an equal protection claim under §1983,

---

[4] Plaintiff correctly points out that "[t]he time for arguing pleading specificity has long since passed." (Pl. Opp. p. 24.)

[5] Plaintiffs cannot obtain relief under §1983 for a violation of the FMLA. *Hayduk v. City of Johnstown*, 580 F. Supp. 2d 429, 485 (W.D. Pa. 2008) (holding that the FMLA "provides the exclusive means of recovery for violation of rights created by the FMLA.")

plaintiff must allege that she was: (1) a member of a protected class; (2) similarly situated to members of an unprotected class; and (3) treated differently from members of the unprotected class. *Green v. Chester Upland School Dist.*, 89 F.Supp.3d 682, 693 (E.D. Pa. 2015) (citations omitted).

To support her §1983 claim for sexual harassment and hostile work environment, plaintiff cites to:

    1. Wilkie's report (ECF No. 40–30);

    2. Benson's deposition testimony confirming that she referred to plaintiff as a member of the mayor's "pussy posse" and that she told Wilkie that she preferred to hire men (ECF No. 40–19 pp. 20, 21, 73:6–16, 77:8–16); and

    3. the Township's anti-harassment policy prohibiting harassment of an employee by another employee (ECF No. 40–32 p. 2.)

Defendants counter that Benson was "nasty to everyone, regardless of gender" (Def. Reply p. 24) and that because plaintiff failed to identify any similarly situated persons who were treated differently, she cannot prove that her equal protection rights were violated (*id.*) Defendants cite to evidence in the record that: (1) Benson treated other employees badly (Def. SOMF ¶ 47; ECF No. 40–16 p. 67); (2) plaintiff was unaware of anyone that had been complimented by Benson (ECF No. 40–16 p. 19, 67:5–7); (3) most employees were "very upset and were uncomfortable" with Benson (*Id.*, 67:8–13); and (4) employees were upset about "how [Benson] made them feel. Some of them wanted to retire early before they couldn't take it working for her anymore. Another one mentioned she was upset, the way [Benson] handled and spoke about—gossiped about her husband committing suicide" (*Id.* p. 27, 101:5–18).

I agree with defendants that plaintiff cannot prove that her equal protection rights were violated. For plaintiff to meet the *prima facie* elements of an equal protection claim under §1983, she must present evidence that similarly situated members of an unprotected class were treated differently

from her. *See Green*, 89 F.Supp.3d at 693; *see also Sherrill v. City of Hoboken*, Case No. 16-3093, 2020 WL 64617, *7 (D.N.J. Jan. 6, 2020), aff'd 2021 WL 4473392 (3d Cir. Sept. 30, 2021) (dismissing a §1983 equal protection claim in the context of public employment because plaintiff failed to "provide specific allegations identifying similarly situated parties and instances in which they were or were not treated different from the plaintiff"); *Kasper v. Cty. Of Bucks*, 514 F. App'x 210, 213 (3d Cir. 2013) ("In order to establish a §1983 equal protection claim (in public employment), [plaintiff] must demonstrate that she received different treatment than other similarly situated persons and that the disparate treatment was based on her protected class status"); *Raven v. City of Philadelphia*, Civ. A. No. 15-4146, 2017 WL 930316, at *4 (E.D. Pa. March 8, 2017) (dismissing counts related to plaintiff's equal protection claim because plaintiff's second amended complaint simply concluded that defendant did not subject similarly situated white police officers to the same treatment as plaintiff, an African-American officer, without any further support for the conclusory statement).

Here, plaintiff testified that while working at the Senior Center, with Benson as her supervisor, there were seven other employees in her department. (ECF No. 40–16 p. 18, 64:18–65:1). Three of the employees were men. (*Id.*) Although plaintiff alleges that defendant Benson violated her equal protection rights based on gender and age discrimination, plaintiff failed to raise any arguments or present any evidence indicating that Benson treated the three similarly situated men in her department differently. To be certain, Benson calling plaintiff a part of the mayor's "pussy posse" and saying that she preferred to hire men is inappropriate, but there is no evidence that Benson was not equally demeaning to men in her department.[6] Indeed, it appears to

---

[6] To the extent plaintiff argues that defendants must demonstrate that Benson treated men the same as women, the burden only shifts to defendants after plaintiff

14

be undisputed that Benson was demeaning to other employees. And there is no evidence—or even an allegation—that plaintiff was not hired for a position because Benson hired a less qualified man.[7] "[I]f a supervisor is equally crude and vulgar to all employees, regardless of their sex, no basis exists for a sex harassment claim. Although the supervisor may not be a nice person, he is not abusing a plaintiff because of her sex." *Lehmann v. Toys R Us, Inc.*, 132 N.J. 587, 604 (1993).

### C. Subject Matter Jurisdiction

Because I grant summary judgment in favor of defendants on counts one, eight, and nine of the complaint, no federal claims will remain in this case. Accordingly, I decline to exercise supplemental jurisdiction over the state claims pursuant to 18 U.S.C. § 1367(c)(3).

### III. CONCLUSION

Summary judgment is granted in favor of defendants as to counts one, eight, and nine of the complaint. Because only state law claims remain, this case is dismissed for lack of subject matter jurisdiction with leave to reinstate the claims in the appropriate state court within 30 days of the entry of this

---

sufficiently shows disparate treatment, which she cannot. *See Road-Con, Inc. v. City of Philadelphia*, 120 F.4th 346, 359 (3d Cir. 2024) (citations omitted) (stating that once a plaintiff demonstrates different treatment from that received by other individuals similarly situated, the burden shifts to defendant to show that the different treatment passes the required level of scrutiny).

[7] Because plaintiff cannot assert a viable §1983 claim, her *Monell* claim fails as a matter of law. *See Sanford v. Stiles*, 456 F.3d 298, 314 (3d Cir. 2006) (stating that "in order for municipal liability to exist, there must still be a violation of the plaintiff's constitutional rights.")

order unless state law provides for a longer tolling period.  *See* 28 U.S.C. §1367(d).  An appropriate Order will accompany this Opinion.

　　　　　　　　　　　　　　　　　　　　*/s/ Edward S. Kiel*
　　　　　　　　　　　　　　　　　　　　**EDWARD S. KIEL**
　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**

Date: November 27, 2024